# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **CLARK A. ROBERTSON** | : | CASE NO. |
| 1172 MANCHESTER ROAD | : | |
| AKRON, OHIO 44307-1635 | : | JUDGE |
| | : | |
| **PLAINTIFF,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **UNIVERSITY OF AKRON SCHOOL OF LAW** | : | |
| 150 UNIVERSITY AVE. | : | |
| AKRON OHIO 44325 | : | **COMPLAINT AND JURY** |
| | : | **DEMAND** |
| **CHRISTOPHER J. PETERS** | : | |
| DEAN, UNIVERSITY OF AKRON SCHOOL OF LAW | : | |
| MCDOWELL LAW CENTER | : | |
| 150 UNIVERSITY AVENUE | : | |
| AKRON, OHIO 44325-2901 | : | |
| | : | |
| **CHARLES OLDFIELD** | : | |
| ASSIST. DEAN, UNIVERSITY OF AKRON SCHOOL OF LAW | : | |
| MCDOWELL LAW CENTER | : | |
| 150 UNIVERSITY AVENUE | : | |
| AKRON, OH 44325-2901 | : | |
| | : | |
| **JOHN C. GREEN** | : | |
| INTERIM PRESIDENT | : | |
| UNIVERSITY OF AKRON | : | |
| 302 BECHTEL AVE. | : | |
| AKRON, OHIO 44325 | : | |
| | : | |
| **DALE E. GOODING, JR.** | : | |
| CHIEF, UNIVERSITY OF AKRON POLICE DEPARTMENT | : | |
| 146 HILL STREET | : | |
| AKRON, OHIO 44325-0402 | : | |
| | : | |
| **JAMES P. WEBER** | : | |
| FORMER UNIVERSITY OF AKRON POLICE | : | |
| 146 HILL STREET | : | |
| AKRON, OHIO 44325-0402 | | |

1

TODD R. HOUGH                       :

OFFICER, UNIVERSITY OF AKRON POLICE  :

146 HILL STREET                     :

AKRON, OHIO 44325-0402           :

                                 :

THOMAS A. GEDEON                 :

OFFICER, UNIVERSITY OF AKRON POLICE  :

146 HILL STREET                     :

AKRON, OHIO 44325-0402           :

                                 :

THOMAS WAYNER                    :

OFFICER, UNIVERSITY OF AKRON POLICE  :

146 HILL STREET                     :

AKRON, OHIO 44325-0402           :

                                 :

SUMMA HEALTH SYSTEM             :

141 N. FORGE ST.                    :

AKRON, OHIO 44304                :

                                 :

THOMAS GSPANDL M. D.            :

ST. THOMAS PSYCHIATRIC HOSPITAL    :

444 N. MAIN STREET               :

AKRON, OH 44310                 :

                                 :

DEFENDANTS.                       :

---

## COMPLAINT FOR MONEY DAMAGES WITH JURY DEMAND

Plaintiff Clark Robertson presents this Complaint for Money Damages with Jury Demand under 42 U.S.C §§1983 and 1985, the Americans with Disabilities Act (ADA), 29 U.S.C. §§ 12101 et seq,, the Rehabilitation Act of 1973, 29 U.S.C. §504, and state law claims of violation of the Ohio Constitution, Ohio involuntary commitment law, invasion of privacy, conspiracy, false imprisonment, and breach of contract, stating as follows:

1. This Court has federal jurisdiction over the federal claims asserted in this Complaint pursuant to 28 U.S.C. §1331. This court has pendent jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

2

2.  All operative facts giving rise to this Complaint occurred within the City of Akron, Summit County, Ohio. Venue is proper in this Court.

3.  Plaintiff Clark Robertson is a 69-year old resident of the City of Akron in Summit County, Ohio. Plaintiff is a veteran with a mental health disability of anxiety. Because of this mental health issue, Plaintiff received Veteran's disability benefits from 2015 to 2017, at which time he became full retirement age. Plaintiff was a law student at the University of Akron Law School. He holds several post graduate degrees including two L.L.M.s in tax and international relations, a J.D. from a California Bar Approved Law School- San Francisco Law School, and B.S. degrees in Geophysics & Geology.

4.  Defendant University of Akron Law School is an "institution of higher education" under Ohio Revised Code Chapter 3345, specifically 3345.12(A)(1). It is located within Summit County, Ohio. The law school receives state and federal funds. John C. Green is its Interim President. Green acted under the state law when unlawfully issuing discipline and a hearing as stated herein. Defendants have a policy and custom of violating the constitution when discipling students. Green is liable in his individual and official capacities.

5.  Defendants Christopher J. Peters and Charles Oldfield are Deans of the School of Law at the University of Akron who, acting under the color of state law, participated in certain unlawful conduct described below.  Peters and Oldfield have a policy and custom of violating student's rights in ordering psychiatric treatment and implementing involuntary commitments. They are sued in their individual and official capacities.

6. Defendant Dale E. Gooding, Jr. is the current Chief of University of Akron Police. The University of Akron Police are "state university law enforcement officers" under Ohio Revised Code 3345.04. During Plaintiff's time at the law school, the University of Akron Police department applied a policy and custom of violating constitutional rights when implementing an involuntary commitment. He is sued in his official and individual capacities.

7. Defendants Todd R. Hough, Thomas A. Gedeon, Thomas Wayner, and James P. Weber were the responding officers of the University of Akron Police Department. Acting under color of state law, they unlawfully placed Plaintiff in custody and detained him on August 29, 2018. Without proper cause and against his will, they transported him to a hospital emergency room for an invasive psychiatric assessment. Defendant officers have a custom and policy of violating constitutional rights and Ohio law when implementing involuntary commitment laws. They are sued in their individual and official capacities.

8. Summa Health Systems owns and operates medical facilities and hospitals in the Akron metropolitan area. Summa Health System owns and operates both hospitals to which Plaintiff was admitted during his commitment procedure.

9. Plaintiff began attending the University of Akron School of Law in January 2017. He had been awarded a three-year scholarship of $15,000.00 per year.

10. Throughout Plaintiff's time as a student, the Defendant Deans, as well as other employees and students, continually harassed and ridiculed Plaintiff based on his age and mental health disability of anxiety. Defendant Law School and Defendant Law

School personnel circulated emails containing disparaging remarks about Plaintiff including calling an "odd duck."

11. In November 2017, Dean Oldfield told Plaintiff that he had the choice of either being evaluated by Cleveland Clinic for a psychiatric disorder or being prohibited from taking a test in his class. Oldfield's intent was to have Plaintiff involuntarily committed to a psychiatric hospital. To maintain his academic standing, Plaintiff was forced to be evaluated by Cleveland Clinic psychiatrists. That day, Defendant police officers placed Plaintiff into custody and took him to Cleveland Clinic, Akron Campus, for psychiatric evaluation. The psychiatrists at Cleveland Clinic examined him, diagnosed anxiety, opined that he did not have a "mental illness subject to a court order" under Ohio involuntary commitment laws, and released him immediately.

12. Because of this wrongful seizure of his person and invasion of privacy, Plaintiff was too stressed, and his anxiety disability was so aggravated, that he became medically unable to take the examination. Even though Cleveland Clinic had cleared Plaintiff as far as purported "mental illness" and need for hospitalization, Oldfield prohibited Plaintiff from taking a make-up test that is permitted for students without a mental health disability. Plaintiff received a zero for the test and received an overall poor grade in this class because of this denial.

13. On November 16, 2017, Defendant Oldfield wrongfully forced Plaintiff to obtain services from the University of Akron Counseling Center and personally escorted him there. Without cause, Oldfield inspected Plaintiff's locker, invaded his privacy, and asked him to open his bassoon case, which carried a bassoon.

14. In March 2018, Plaintiff filed a complaint with the United States Department of Education Office for Civil Rights (OCR) alleging discrimination based upon age and disability.

15. On August 13, 2018, the OCR complaint allegations were discussed in a mediation facilitated by the Federal Mediation & Conciliation Service (FMCS). The mediator Barbera Baker wrongfully suggested that Plaintiff drop his charges and not proceed with a formal investigation because of stress. Due to this pressure, Plaintiff decided to drop his charges and place the matter behind him even though the mediation had not resolved or addressed any of his concerns.

16. On August 17, 2018, certain Defendants engaged in further acts of harassment toward Plaintiff. Dean Oldfield warned him that he "was going to fuck his crazy ass."

17. In the morning of August 29, 2018, Plaintiff telephoned Barbara Baker to report the harassment. Baker then called Carolyn Brommer, Regional Director at the Federal Mediation and Conciliation Service (FMCS), about the call. During the telephone call with Baker, Plaintiff advised that he wanted to file a new claim for retaliation. In the context of a retaliation charge, Plaintiff commented during his conversation with Baker that he wants to take "legal retaliation toward the school because they are discriminating [because of] my age and it is not right." He stated that he "did not want to commit suicide" and that if they "want to push [him] to the edge … [he] will put them on the map …it will absolutely be a nasty mess." By these words, Plaintiff meant that he would take legal action. He did not intend to commit suicide or harm anyone.

18. Brommer contacted Defendant Akron School of Law personnel and forwarded the tape of the conversation to its personnel.

19. At about 1pm that day, Plaintiff consulted with his personal physician Joseph Armao M.D. about the stress caused by the law school's discriminatory and abusive treatment of him due to his age, disability, and retaliation for filing a complaint with OCR. After an interview with Plaintiff, Dr. Armao stated in his records that Plaintiff was not suicidal and had no intent to harm others. He diagnosed Plaintiff with generalized anxiety disorder and moderate depression.

20. After listening to the voice mail forwarded by Brommer, at about 3 pm Defendant Law School Deans contacted Defendant University of Akron Police Department officers to request that it send officers to the School of Law to take Plaintiff into custody. At that time, Plaintiff was meeting with law school personnel Misty Franklin and Dean Janoski to request that he be permitted to drop his classes. This was in accordance with an email recommendation from Kelly Kulick of the Office of Accessibilities - even though he had received two A's in Summer classes.

21. Defendant Police officers interviewed Plaintiff. Plaintiff cooperated and declared that he had no intention to harm himself or others and did not own any gun or weapon. He assured the Police Officers that he had no intention to commit suicide. Plaintiff explained that the "nasty mess" and "putting them on the map" statements were only referencing legal proceedings. Plaintiff advised that he only wanted to get his day in court. Plaintiff directed the officers to contact his physician Joseph Armao M.D., whom he had seen that day, to discuss his current mental condition. However,

Defendant police officers, law school, and Defendant Deans refused or neglected to do so.

22. Thereafter, Defendant law school personnel directed the police officers to listen to the tape recording forwarded by Brommer. Even though Plaintiff had denied that he intended to harm himself and others, based upon the Defendants University of Akron Law School and personnel's directions to them, the officers "pink-slipped" Plaintiff on an emergency basis. The police officers unlawfully placed Plaintiff in custody.  A "pink-slip" is when a mental health professional or court orders or engages in taking custody of a person whom it accesses to be a "mentally ill person subject to a court order."  The law school Defendants were not permitted to make this psychiatric assessment. The appropriate professional who is ordering the custody completes a pink colored slip stating the reasons that it is committing the person on an emergency basis. The pink-slip is necessary to hold the subject in custody of the police or mental health facility. For an emergency commitment, the committed person can be involuntarily held for up to 72 hours.  The Defendant officers had no authority to place Plaintiff in custody because under the circumstances and the context of his statements, he was not a "danger to himself or others" nor a "mentally ill person subject to a court order." Defendant university personnel had no statutory authority or qualifications to assess whether Plaintiff was a danger to himself and others. Although this was not a criminal proceeding, because of the mandatory detention and deprivation of liberty interests, Plaintiff was placed in police custody without a warning regarding his right to remain silent during the custody and voluntary commitment proceedings. Plaintiff was unlawfully placed into police custody and

8

into a police car in full view of his law school peers and its faculty. As a result,

Plaintiff was filled with anguish, shame, and fear.

23. On the way to Summa Health Akron Emergency Department, Officer Wayner

stopped at the University of Akron Police Department for one half hour. He left

Plaintiff in the police car with all windows closed while the outside temperature was

above 90 degrees. The car became so hot that Plaintiff became dehydrated to the

extent that he suffered acute kidney damage. Older individuals are more susceptible

to having health issues from heat exposure. When Plaintiff arrived at the Emergency

Department at the hospital, his laboratory results showed dehydration and acute

kidney injury. Plaintiff was immediately admitted to Summa Health Hospital-Akron

Campus and placed on a saline drip for twenty-two hours.

24. On August 29 and 30, 2018, the Akron City Hospital Emergency Department

conducted an unwanted and unmerited involuntary psychiatric assessment of

Plaintiff. The Hospital violated his right to privacy by forcing him to speak about his

mental health. The Hospital stated in writing that Plaintiff threatened suicide, which

Plaintiff denied.

25. Thereafter, on August 30, 2018, the Hospital "pink-slipped" Plaintiff and transferred

him, over objection, to Summa Health -St. Thomas Campus, a psychiatric hospital.

To be able to hold him indefinitely, the hospital directed Plaintiff to sign a voluntary

admission form. Plaintiff was not advised of his right to counsel or an evidentiary

court hearing on the issue of whether he was "a mentally ill person subject to a court

order." By signing the voluntary admission form, he was waiving these rights.  Dr.

Scavelli, the first doctor who met with Plaintiff, told him that he would be dismissed

within a day or two, as the law mandates.  Summa Health Systems, which owns and operates St. Thomas Hospital, essentially involuntarily committed Plaintiff to hospitalization for 18 days despite Plaintiff's multiple requests to leave.

26. In order to be discharged, Plaintiff called the Veteran's Administration (VA) Hotline at the White House for help. The VA intervened and sent Plaintiff the documents necessary for admission and transfer as required by Ohio involuntary commitment law mental health law. During his wrongful commitment, Plaintiff called many government agencies, including his Congressman, to seek help in getting discharged from the hospital.

27. Plaintiff initially refused to take antipsychotic medication which, due to his voluntary status from signing the voluntary admission form under duress, he was not required to take. Defendant hospital and Defendant Thomas Gspandl M.D. filed an affidavit in probate court seeking a court order forcing Plaintiff to take this medication. Dr. Gspandl informed Plaintiff that if he does not take this medicine, he will obtain a court order permitting him to forcibly medicate Plaintiff with anti-psychotics. Dr. Gspandl threatened Plaintiff that he will be hospitalized a long time and indefinitely if he does not take the antipsychotic medicine. Under duress and because Plaintiff desired to leave the hospital, he took the antipsychotic medication. The probate proceeding was dropped. Dr. Gspandl wrongfully communicated with Defendant University of Akron Law School and its personnel, namely Defendant Oldfield. They unlawfully conspired to keep Plaintiff locked up in a psychiatric hospital indefinitely.

28. On August 30, 2018, Defendants University of Akron Law School and Interim
President Peters advised Plaintiff in writing that he could no longer set foot on Akron
University campus. If he did so, he would be charged with criminal trespassing. In
that letter, Defendant University of Akron Law School and Peters gave Plaintiff
notice of a scheduled hearing regarding a conduct violation, and whether this
disciplinary action was merited, and whether he should be permanently excluded
from the university. Defendants' written materials for students who were given a
conduct hearing stated that such students, including Plaintiff, were entitled to bring
an "advisor" for "emotional support." The advisor, who could be an attorney, was
not permitted to speak or cross-examine witnesses at the hearing.

29. Although Plaintiff had a due process right to legal counsel and cross examination at
the hearing, Defendant law school and Deans unlawfully denied the lawyer or
advisor his right to speak and cross-examine Defendants' witnesses.

30. Plaintiff objected to being denied his right to legal counsel, his right to speak, and his
right to cross-examination. Defendant failed to respond to Plaintiff's objections.

31.  As a result of Defendants' denial of procedural and substantive due process, Plaintiff
declined to attend the purported hearing. As a result of Defendants' denial of Plaintiff's
constitutional rights, Plaintiff remains excluded from the university campus and has been
unable to complete his studies at the Akron School of Law.


**COUNT I**

**Violations of Constitutionally Protected Rights against all Government Defendants**

**under 42 U.S.C. §1983**

11

32. Plaintiff Robertson incorporates by reference all previous paragraphs of this Complaint as if fully rewritten.

33. Defendant individuals and the University of Akron School of law, under color of state law, violated Plaintiff Robertson's federally protected rights, privileges, and immunities secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

34. Defendants knew or should have known that these right s are clearly established and that the above referenced actions or culpable failures to act violated Plaintiff's federally protected rights including, but not limited to:

(a) right to free speech,

(b) freedom from mental and physical injury during custody,

(c) invasion of privacy,

(d) denial of liberty and property rights,

(e) denial of procedural and substantive due process of law; and

(f) right to silence.

35. For denial of substantive due process, Plaintiff avers that he has been denied liberty and property. Defendants did not have an adequate justification for doing so. Defendants' acts shock the conscience.

36. As a result of the above, Defendants caused Plaintiff to suffer damages.

## COUNT II

### Failure to Protect and Failure to Intervene under 42 U.S.C. §1983

37. Plaintiff Robertson incorporates by reference all previous paragraphs of this Complaint as if fully rewritten.

38. During and after the arrest of Plaintiff Robertson, Defendant individuals and police officers were aware or should have been aware that they violated Plaintiff's constitutional rights.

39. Defendants failed to protect and intervene to prevent the other Defendants from violating Plaintiff's federally protected rights.

40. Due to the named Defendants' constitutionally deficient conduct, each Defendant individually and together caused him damages in an amount to be proven at trial.

41. As a result of the above, Defendants caused Plaintiff to suffer damages.

## COUNT III

### Conspiracy to Violate Plaintiff's Protected Civil Rights under 42 U.S.C. §1985

42. Plaintiff Robertson incorporates by reference all previous paragraphs of this Complaint as if fully rewritten.

    In violation of 42 U.S.C. §1985, Defendants conspired to deprive Plaintiff Robertson of his federally protected rights.

43. As further proof of Defendants' efforts to conspire, Defendant Officers' Police Report indicates that Plaintiff was only "irate."

44. Defendants entered into a single agreement to deprive Plaintiff Robertson of his federally protected rights.

45. Each Defendant shared in the conspiratorial goal of using abusive and unlawful school and police tactics on Plaintiff Robertson while involuntarily committing him to the psychiatric ward.

46. As a result of the above, Defendants caused Plaintiff to suffer damages.

## COUNT IV

### False Imprisonment against Hospital and Dr. Gspandl.

47. Plaintiff Robertson incorporates by reference all previous paragraphs of this Complaint as if fully rewritten.

48. Defendant Hospital and Dr. Gspandl intentionally restrained, detained, and confined Plaintiff.

49. This confinement forced the victim to stay in its custody for eighteen days.

50. Plaintiff did not consent to the confinement.

51. The detention was unlawful.

52. As a result of the above, Defendants caused Plaintiff to suffer damages.

## COUNT V

### Americans with Disabilities Act of 1990 under 42 U.S.C. §12101 et seq., Title II (ADA)

53. Plaintiff Robertson incorporates by reference all previous paragraphs of this Complaint as if fully rewritten.

54. Subtitle A of Title II of the ADA is intended to protect qualified individuals with disabilities from discrimination based on disability in the services, programs, or activities of all State and local government.

55. Defendant University of Akron and University of Akron School of Law are "public entities" under II-1.2000.

56. Plaintiff is a "qualified individual with a mental disability."  Plaintiff had received disability benefits from the Veteran's Administration until he reached full retirement age. He suffers from a mental impairment that substantially limits one or more major life activities. He has a record of mental impairment that substantially limits one or more major life activities.

57. Defendants also regard Plaintiff as having "a mental impairment that substantially limit major life activities, whether or not he actually has an impairment." Plaintiff was not a "direct threat" by being at significant risk to the health or safety of others.

58. Defendants' determination that Plaintiff holds a direct threat to the health or safety of others was based on the generalization and stereotypes about the effects of a specific disability.

59. Defendants' "direct threat" defense did not rely on current medical evidence or objective evidence that the probability of actual injury will occur.

60. Defendant Law School knowingly and deliberately violated the Americans with Disabilities Act by failing to accommodate Plaintiff's disabilities 42 U.S.C. §12101 et seq., Title II (ADA). Instead of making reasonable accommodation, Defendant had Plaintiff involuntarily committed to a mental health hospital.

61. As a result of the above, Defendant's actions violated the ADA, causing Plaintiff to suffer damages.

## COUNT VI

### Rehabilitation Act of 1973 under 29 U.S.C. §504 et seq.

62. Plaintiff Robertson incorporates by reference all previous paragraphs of this Complaint as if fully rewritten.

63. The claim under the Rehabilitation Act of 1973, 29 U.S.C. §504 et seq. involves the same law and facts as the ADA. Each Defendant knowingly and deliberately violated the Rehabilitation Act of 1973 by failing to accommodate Plaintiff's disabilities under 29 U.S.C. §504 et seq.

64. As a result of the above, Defendants caused Plaintiff to suffer damages.

## COUNT VII

### Ohio Law Invasion of Privacy

65. Plaintiff realleges the previous paragraph as if fully rewritten herein.

66. Defendants wrongfully intruded upon Plaintiff's solitude and private affairs. Defendants unlawfully made public disclosure of private facts.

67. The intrusion and public disclosure of private facts would be highly offensive to a reasonable man.

68. Plaintiff suffered damages because of the invasion of privacy.

## COUNT VIII

### Ohio Constitution

69. Plaintiff realleges the previous paragraphs.

70. The Ohio Constitution grants Ohio citizens procedural and substantive due process of law under Article I, Bill of Rights, primarily I.01 Inalienable Rights and I.16 Redress for Injury; Due Process.

71. The government entities, through its Defendant employees, denied Plaintiff due process of law and other inalienable rights under the Ohio Constitution.

72. This denial of rights caused Plaintiff damages.

## COUNT IX

### Breach of Contract

73. Plaintiff and Defendant Law School entered a contract whereby Plaintiff would pay tuition to Defendants and in return Defendants would provide education that resulted that in a Juris Doctorate degree. Pending the successful completion of the Bar examination, this degree would permit Plaintiff to be licensed as an attorney at the law.

74. Without sufficient cause, Defendants breached this contract by suspending Plaintiff and barring him from entering the University of Akron premises. To possibly obtain readmission to continue his law studies, Plaintiff was required to attend a hearing about his alleged violations of the code of student conduct. In bad faith, the hearing procedure violated rights to substantive and procedural due process of law under the Ohio and United States Constitution. Plaintiff was wrongfully denied counsel and cross-examination.

75. As a result of the bad faith and unlawful breach of contract, Defendants caused Plaintiff to suffer damages.

## COUNT X

### Violation of Ohio Involuntary Commitment Laws

76. In Ohio Revised Code Chapter 5122, the State of Ohio provides mandatory procedures regarding involuntary commitment.

77. Plaintiff was committed on an "emergency" basis under Ohio Revised Code under 5122.05 and 522.10.

78. Defendants government entities and personnel, as well as Summa Hospitals and Dr. Gspandl, violated these laws by failing to comply with the either the prerequisites to initiate an emergency commitment and procedure during the commitment.  Defendants unlawfully failed to discharge Plaintiff after 72 hours, failed to provide him an evidentiary hearing, denied him counsel, denied him an independent psychiatric examination, forced him to take antipsychotic medicine without a court order finding him "mentally ill subject to a court order" under Chapter 5122.01(B), and failed to dismiss him after he requested to leave. Plaintiff was forced to call the White House Veteran's Hotline to secure his dismissal. Defendants failed to comply with O.R.C. 5122.11, court ordered treatment of a mentally ill person., 5122.12 hearing notice, 5122.13 investigation, 5122.14 pre-hearing medical examination, 5122.141, initial hearing, 5122.15 full hearing, 5122.29 patient's rights, and 5122.31 confidentiality and other violations. Such violations were made in bad faith.

79. For the above reasons, Plaintiff suffered damages.

## COUNT XI

### Conspiracy

80. Plaintiff avers the previous paragraphs as if fully rewritten herein.

81. Dean Oldfield, University of Akron Law School, and Dr. Gspandl, among others, combined maliciously to unlawfully injure Plaintiff by denying him release from the psychiatric hospital and forcing him to take psychiatric medicines.

82. As a result of this conspiracy, Plaintiff suffered damages.


WHEREFORE, Plaintiff demands judgment as follows:

A.  Award Plaintiff actual damages;

B.  Award Plaintiff compensatory damages and damages for emotional distress;

C.  Award Plaintiff punitive damages against Defendants as appropriate, in an amount to be established at trial;

D.  Award Plaintiff reasonable attorney fees and costs pursuant to 42 U.S.C §1988, the ADA, the Rehabilitation Act, and any other applicable law;

E.  Award Plaintiff prejudgment interest and post judgement interest;

F.  Grant injunctive relief to cure all constitutional deprivations caused by Defendants and to require Defendants to cease such constitutional deprivations in the future;

G.  Award Plaintiff any other and additional relief to which Plaintiff is entitled by law or equity and to which Court deems proper.



/sEmily J. Lewis
Law Offices of Emily J. Lewis (0037300)

Trial Attorney for Clark Robertson
*5650 Blazer Parkway, Suite 100*
*Dublin, Ohio 43017*
*Tel: 614-734-6270*
*Fax: 614-734-7270*
*ejl@elewislaw.com*

### Jury Demand

Plaintiff requests a Jury Trial as to all claims triable by Jury.

/sEmily J. Lewis