**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CLARK A. ROBERTSON, | ) | CASE NO. 5:20-cv-1907 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| UNIVERSITY OF AKRON SCHOOL OF | ) | |
| LAW, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

In this civil rights action, plaintiff Clark Robertson ("Robertson"), through his attorney, alleges that the following state entities and/or individuals violated his rights under federal and state law: University of Akron School of Law ("UAL"); and Christopher J. Peters ("Dean Peters"), Charles Oldfield ("Dean Oldfield"), John C. Green ("Green"), Dale E. Gooding, Jr. ("Gooding"), James P. Weber ("Weber"), Todd R. Hough ("Hough"), Thomas A. Gedeon ("Gedeon"), and Thomas Wayner ("Wayner") (collectively "UA Individuals"). Robertson also raises federal and state claims against two private actors: Summa Health System ("Summa") and Thomas Gspandl M.D. ("Dr. Gspandl") (collectively "Summa Defendants").

Now before the Court are the following fully briefed motions: (1) the motion of UAL and UA Individuals for judgment on the pleadings (Doc. No. 11 (MJP), Doc. No. 14 (Opposition), Doc. No. 17 (Reply)); (2) the motion of Summa Defendants for judgment on the pleadings (Doc. No. 16 (MJP), Doc No. 20 (Opposition), Doc. No. 23 (Reply)); and (3) Robertson's motion to voluntarily dismiss certain claims (Doc. No. 21 (MTD), Doc. No. 22 (UAL and UA Individual's response).)

## I. BACKGROUND

Robertson is a 69-year old resident of Ohio "with a mental health disability of anxiety[,]" for which he received disability benefits until he reached retirement. (Doc. No. 1 (Complaint) ¶ 3.) Robertson holds several college degrees, including a law degree from an accredited law school. (*Id*.) He began attending UAL in 2017, having received a three-year scholarship. (*See id*. ¶ 9.) Robertson maintains that, throughout his time as a student at UAL, Deans Peters and Oldfield, and others harassed and ridiculed him on the basis of his age and mental health disability. (*Id*. ¶¶ 5, 10.)

In November 2017, Dean Oldfield advised Robertson that if he wanted to maintain his academic standing at UAL he would have to submit to a psychiatric examination at the Cleveland Clinic. (*Id*. ¶ 11.) "Defendant police officers" placed Robertson in custody and transported him to the Cleveland Clinic, Akron Campus. (*Id*.) The examining psychiatrists determined that Robertson suffered from anxiety but did not have a mental illness that would warrant involuntary commitment under Ohio law. (*Id*.) Following Robertson's release, Dean Oldfield forced Robertson to obtain counseling services from the university and, without cause, inspected his locker and bassoon case. (*Id*. ¶ 13.)

In March 2018, Robertson filed a complaint with the United States Department of Education Office for Civil Rights ("OCR") alleging discrimination based upon age and disability. (*Id*. ¶ 14.) Robertson and UAL participated in a mediation session with mediator Barb[a]ra Baker ("Baker") of the Federal Mediation & Conciliation Service ("FMCS"). (*Id*. ¶ 15.) At the conclusion of the mediation session, Robertson agreed not to pursue the matter further because of stress. (*Id*.) Robertson alleges that, following the mediation, certain AU

Individuals continued to harass Robertson, and on August 17, 2018, Dean Oldfield warned Robertson that he "was going to fuck his crazy ass." (*Id*. ¶ 16.)

On the morning of August 29, 2018, Robertson called Baker and advised her that he wanted to file a claim of retaliation against UAL because it was discriminating against him on the basis of his age. (*Id*. ¶ 17.) During the telephone call, Robertson informed Baker that he "did not want to commit suicide" and that if the university "want[ed] to push [him to the edge] . . . [he] will put them on the map . . . it will absolutely be a nasty mess." (*Id*.) According to Robertson, the "nasty mess", and the act of "putting [UAL] on the map", referred to his plan to take legal action against UAL. (*Id*.)

Following the telephone call, Baker called Carolyn Brommer ("Brommer"), Baker's superior at FMCS, and reported Robertson's call. (*Id*.) Brommer then contacted UAL and forwarded a tape recording of the telephone call. (*Id*. ¶ 18.) After listening to the recording, Deans Peters and Oldfield contacted University of Akron Police Department and requested that officers take Robertson into custody. (*Id*. ¶ 20.) Hough, Gedeon, Wayner, and Weber—all University of Akron police officers (collectively "UA Officers")—responded to the call. (*Id*. ¶ 20, *see id*. ¶ 7.) Robertson assured UA Officers that he had no intention of committing suicide and that he only wanted to "get his day in court." (*Id*. ¶ 21.) Nevertheless, UA Officers "pink-slipped" Robertson, referring to the pink colored slip filled out by a healthcare professional to involuntarily commit a mentally ill person for psychiatric evaluation over a period of 72 hours, and transported him to Summa's emergency department. (*Id*. ¶ 22.)

On August 29 and 30, 2018, Summa conducted an "unwanted and unmerited involuntary psychiatric assessment of" Robertson. (*Id*. ¶ 24.) On August 30, 2018, Summa "pink-slipped"

Robertson and transferred him, over objection, to Summa's psychiatric hospital. (*Id*. ¶ 25.) Summa then directed Robertson to sign a voluntary admission form. (*Id*.) Summa ultimately admitted Robertson to its psychiatric hospital and held him for 18 days despite his requests to be released. (*Id*.) Robertson was eventually released after he contacted the Hotline for the Veteran's Administration ("VA") and the VA intervened on his behalf. (*Id*. ¶ 26.)

During Robertson's stay at the psychiatric hospital, Summa and Dr. Gspandl caused an affidavit to be filed in probate court seeking a court order forcing Robertson to take antipsychotic medication. (*Id*. ¶ 27.) Dr. Gspandl threatened Robertson that he would be hospitalized for a long time if he refused to take the medication. (*Id*.) According to Robertson, he eventually agreed to take the medication, though he did so under duress. (*Id*.)

On August 30, 2018, UAL and Green, the Interim President of UAL, advised Robertson in writing that he was no longer permitted on the UAL campus and informed him that there would be a hearing on a conduct violation to determine whether Robertson should be permanently excluded from UAL. (*Id*. ¶¶ 4, 28.) Robertson requested that he be permitted the assistance of counsel and the right to be heard at the scheduled disciplinary hearing. Because UAL and Deans Peters and Oldfield denied these requests, Roberts elected not to attend the hearing. (*Id*. ¶¶ 29–30.) Robertson was excluded from UAL and has been unable to complete his legal studies. (*Id*. ¶ 31.) He filed the instant action on August 26, 2020.

## II.  ROBERTSON'S MOTION TO VOLUNTARILY DISMISS CLAIMS

On November 27, 2020, UAL and UA Individuals filed their motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). Summa Defendants filed their Rule 12(c) motion on January 28, 2021. On March 5, 2021, Robertson filed a motion by which he seeks leave to

voluntarily dismiss certain claims against certain defendants.[1] While Robertson cites Fed. R. Civ. P. 41(b) as the basis for his motion, Rule 41(b) is reserved for motions to dismiss entire actions. *See Dix v. Atos IT Sols. & Servs., Inc*., No. 1:18-cv-275, 2020 WL 6064646, at *1 (S.D. Ohio Mar. 17, 2020) ("Rule 41 provides only for dismissal of 'actions,' not 'claims.'") (citing *Philip Carey Mfg. Co. v. Taylor*, 286 F.2d 782, 785 (6th Cir. 1961)). Where, as here, a plaintiff requests leave to dismiss discrete claims from the litigation, Rule 21 is the appropriate procedural vehicle. *See Wilkerson v. Brakebill*, 3:15-cv-435, 2017 WL 401212, at *2 (E.D. Tenn. Jan. 30, 2017) ("A plaintiff seeking to dismiss only one defendant from an action must move the Court to do so under Rule 21.") (quotation marks and citation omitted); *EQT Gathering, LLC v. A Tract of Prop. Situated in Knott Cty., Ky*., No. 12-cv-58, 2012 WL 3644968, at *2 (E.D. Ky. Aug. 24, 2012) ("Rule 21 permits only the Court . . . to dismiss fewer than all of the claims or parties.").

Rule 21 provides, in relevant part, that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. "Pursuant to Rule 21, courts consider whether allowing withdrawal would be unduly prejudicial to the moving party." *Wilkerson*, 2017 WL 401212, at *2–3 (noting that the analysis is similar to that performed under Rule 41 where the "relevant determination . . . is whether the defendant would suffer 'plain legal prejudice' as a result of the dismissal") (quotation marks and citations omitted). In evaluating the potential prejudice under Rule 41, courts often consider factors such as: (1) "the defendant's effort and expense of preparation for trial," (2) "excessive delay and lack of diligence on the part of the plaintiff in prosecuting the

---

[1] Robertson's first motion to voluntarily dismiss certain claims was filed on January 28, 2021. (Doc. No. 15.) On March 4, 2021, Robertson filed a notice withdrawing his initial motion to dismiss and advised that he would be filing a superseding motion to dismiss, which is presently at issue. (Doc. No. 19.)

case," (3) "insufficient explanation for the need to take a dismissal," and (4) "whether a motion for summary judgment has been filed by the defendant." *Grover v. Eli Lily & Co.*, 33 F.3d 716, 718 (6th Cir. 1994); *see Walther v. Florida Tile, Inc.*, 776 F. App'x 310, 316 (6th Cir. 2019). Given that the decision to permit dismissal under either rule turns on the existence of prejudice, consideration of these same factors is also appropriate in the context of a Rule 21 motion. *See, e.g., Wilkerson*, 2017 WL 401212, at *3 ("When evaluating a motion for dismissal under Rule 21 . . . courts should . . . consider Rule 41 standards as guidance in evaluating potential prejudice to the non-movant.") (citing *Arnold v. Heyns*, No. 13-cv-14137, 2015 WL 1131767, at *4 (E.D. Mich. Mar. 11, 2015)). "In general, a motion to dismiss should be granted unless a defendant will suffer plain legal prejudice." *Arnold*, 2015 WL 1131767, at *4 (citation omitted).

The Court finds that defendants will not be unduly prejudiced by a Rule 21 dismissal of certain claims. First, the Court notes that UAL and UA Individuals fail to identify *any* prejudice they will suffer from a voluntary dismissal of certain claims.[2] Instead, their response focuses on the judicial economy that they believe will result by resolving all the claims in the same proceeding. (Doc. No. 22 at 1[3].) But, at the present time, the only pending motions are defendants' Rule 12(c) motions for judgment on the pleadings. The Court and the parties have yet to expend any energy addressing the merits of the action. Further, nothing in the record suggests the parties have begun discovery, let alone trial preparations. There is also no indication

---

[2] Courts have observed that there is less prejudice attached to the dismissal of claims under Rule 21 than the dismissal of entire actions under Rule 41. *See Wilkerson*, 2017 WL 401212, at *2 (There is a significant difference between a Rule 41 and Rule 21 dismissal, "as the prejudice inquiry under Rule 41(a)(2) is designed to protect defendants who have put considerable time and effort into defending a case, only to have the plaintiff pull the rug out from under them by voluntarily dismissing the action.") (quotation marks and citation omitted).

[3] All page number references herein are to the consecutive page numbers applied to each individual document by the court's electronic filing system.

that Robertson delayed in bringing the motion to voluntarily dismiss or acted in bad faith. Instead, the motion appears to be motivated by an effort to streamline the litigation by eliminating some of the complaint deficiencies raised in the dispositive motions. Given that the motion comes early in the litigation, before the Court has even conducted a case management conference and set dates and deadlines for the case, the Court grants Robertson's motion to voluntarily dismiss. *Cf., e.g., Grover*, 33 F.3d at 718–19 (finding abuse of discretion where district court granted plaintiffs' motion for dismissal without prejudice after allowing the parties to litigate for nearly a decade and soliciting, at plaintiff's behest, a certified state supreme court opinion that seemed to "clearly dictate[] a result for the defendant").

Accordingly, subject to the remainder of this opinion, the Court dismisses without prejudice the following claims: Counts I (Civil Rights § 1983), II (Failure to Intervene § 1983), and III (Conspiracy § 1985) against UAL; official capacity claims against UA Individuals; Count IV (False Imprisonment) against all parties; Count V (Americans with Disability Act, 42 U.S.C. § 12101 *et seq.*) against all parties; Count VII (Invasion of Privacy) against UAL and UA Individuals; Count VIII (Ohio Constitution Violations) against UAL and UA Individuals; Count IX (Breach of Contract) against UAL and UA Individuals; Count X (Involuntary Commitment, Ohio Rev. Code § 5122 *et seq.*) against UAL and UA individuals; and Count XI (Ohio Civil Conspiracy) against UAL and UA Individuals. (*See* Doc. No. 21 at 1–2.)

### III. RULE 12(C) STANDARD

Defendants' motions for judgment on the pleadings are governed by Fed. R. Civ. P. 12(c). Under Rule 12(c), a party may move for judgment on the pleadings any time after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). The standard of

review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green,* 133 F.3d 416, 421 (6th Cir. 1998)). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead facts sufficient to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Id.* at 555 (citing authorities).

"'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 479 F.2d 478, 480 (6th Cir. 1973)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio,* 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987)). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235 (6th Cir. 1991) (citation omitted).

In ruling on a Rule 12(c) motion, the court considers all available pleadings, including the complaint and the answer. *See* Fed. R. Civ. P. 12(c). "The court can also consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to

the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC,* 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (citations omitted).

## IV. MOTION OF UAL AND UA INDIVIDUALS FOR JUDGMENT ON THE PLEADINGS

### A.    § 1983 Claims against UA Individuals

Robertson brings two claims against UA Individuals in their individual capacity under 42 U.S.C. § 1983. Count I alleges generally that UA Individuals violated Robertson's rights protected by the "First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution." (Doc. No. 1 ¶ 33.) Count II alleges with equal generality that "Defendants failed to protect and intervene to prevent the other Defendants from violating Plaintiff's federally protected rights." (*Id.* ¶ 39.) UA Individuals argue that both claims must be dismissed against them in their individual capacities because "they lack specific operative facts from which it can be reasonably inferred that any one of them is liable[.]" (Doc. No. 11 at 14.)

#### 1.    Count I—Civil Rights Violations

"When claiming damages for violations of constitutional rights, [p]laintiffs 'must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.'" *Ondo v. City of Cleveland*, 795 F.3d 597, 610 (6th Cir. 2015) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (emphasis in original)); *see also McKenna v. Bowling Green St. Univ*., 568 F. App'x 450, 460 (6th Cir. 2014) ("Simply put, to establish liability . . . , an individual must show that his or her *own* rights were violated, and that the violation was committed *personally* by the defendant.") (quotation marks and citation omitted) (emphasis in original). Therefore, to establish § 1983 liability against a person in their individual

capacity, the plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

With few exceptions, the complaint relies on what is best characterized as "group pleading," where the acts of the UA Individuals are lumped together in each claim and no attempt is made to distinguish the conduct of any individual actor. For example, the complaint alleges that "Defendant law school personnel" directed UA Officers to take Robertson into custody. (*See, e.g.*, Doc. No. 1 ¶ 22.) It further alleges that "Defendant officers" "pink-slipped" him and "unlawfully placed [Robertson] into police custody[.]" (*Id.*) Citing the unreported decision of *Horton v. City of Rockford*, No. 18-cv-6829, 2019 WL 3573566, at *3 (N.D. Ill. Aug. 6, 2019), Robertson argues that allegations "directed at multiple defendants can adequately plead personal involvement or responsibility." (Doc. No. 14 at 5.) He insists that this type of group pleading is sufficient to put each defendant on notice as to the charges against him and satisfies the pleading requirements of Fed. R. Civ. P. 8(a). (*Id.*)

Courts within the Sixth Circuit, however, do not permit "group pleading" outside of certain fraud claims. In *Mhoon v. Metro. Gov't of Nashville & Davidson, Co., Tenn.*, No. 3:16-cv-1751, 2016 WL 6250379, at *3 (M.D. Tenn. Oct. 26, 2016), the court found that excessive force and deliberate indifference allegations failed to indicate whether and how each individual defendant was involved in the use of excessive force. Like the present case, the plaintiff used generic references to "defendants," without specifying which defendants were involved, "even where it [was] clear that not all of them could have been involved." *Id.* at *3. The court concluded that this "form of group pleading [was] insufficient to establish that any one" of the

defendants acted in an unconstitutional manner. *Id*. (citing *Rodriguez v. Providence Cmty. Corrs., Inc*., 191 F. Supp. 3d 758, 773 (M.D. Tenn. 2016) ("A complaint that fails to impute concrete acts to specific litigants, fails to state a plausible claim.") (quotation marks and citations omitted)); *see Gamrat v. Allard*, 320 F. Supp. 3d 927, 942 (W.D. Mich. 2018) (rejecting "group pleading" of claim that individual defendants violated 18 U.S.C. § 2511 by disseminating information obtained through wire taps).

In regard to defendant Green, Robertson's only factual allegations are that he is currently the Interim President of UAL and acted under state law when he "unlawfully" set a hearing on Robertson's conduct violation. (Doc. No. 1 ¶ 4.) While Robertson further asserts without factual support that "Defendants have a policy and custom of violating the constitution when disciplining students[]" (*id*.), such a conclusory allegation leveled against all defendants is insufficient to support a claim against Green individually for violating Robertson's constitutional rights. Similarly, the only factual allegations against Dean Peters are that he is a Dean of UAL and that he advised Robertson of the scheduled disciplinary hearing and that he was not permitted on campus property. (*Id*. ¶¶ 5, 28.) Even coupled with the conclusory allegation that Dean Peters and Dean Oldfield have a policy of violating student's rights in ordering involuntary commitments of students (*see id*. ¶ 5), Robertson has failed to state a § 1983 claim against Dean Peters. As for defendant Gooding, the only mention of him is contained in a factual allegation stating that he is the Chief of the University of Akron Police. (*Id*. ¶ 6.) Again, even considered in concert with the conclusory allegation that the "University of Akron Police Department applied a policy and custom of violating constitutional rights when implementing an involuntary commitment[,]" such a neutral fact is insufficient to support an individual capacity claim against

Gooding. Count I is dismissed as against Green, Peters, and Gooding.

The grouped allegations against UA Officers (Weber, Hough, Gooden, and Wayner) and UAL officials also fail to distinguish among the actions of each individual officer. Instead, the complaint relies entirely on allegations that the "Officers" took various actions that violated Robertson's constitutional rights. Robertson further relies on groupings, such as "Akron School of Law personnel" and "Defendant Deans,"[4] to allege facts to support Count I.[5] (*See, e.g.*, Doc. No. 1 ¶¶ 10, 18, 22, 27, 29, 78.) These allegations are insufficient to demonstrate that each individual defendant was personally involved in the alleged constitutional deprivations. This is not a situation where a plaintiff is unaware of the identity of the UAL administrators or the individual officers who were on the scene when he was allegedly "pink-slipped."[6] Because these allegations fail to state a cause of action against the individual defendants, Count I is dismissed.

Count I, however, is not the only claim to suffer from fatal pleading deficiencies. Peppered throughout the complaint are conclusory allegations of the existence of policies or practices designed to violate students' constitutional rights, devoid of factual allegations to

---

[4] To further confuse the issue, Robertson relies on a number of subtly different designations to refer to defendants. For example, he refers to some sub-groups of defendants as "Defendant law school personnel" and "Defendant university personnel", or "Defendants government entities and personnel[.]" (*See, e.g., id.* ¶¶ 22, 78.) At times, he defaults to the even more ambiguous designation of "Defendants" or "certain Defendants" to refer to fewer than all party defendants. (*See, e.g. id.* ¶¶ 16, 39.)

[5] As for allegations specific to Dean Oldfield, Robertson references certain actions that were the subject of the 2018 OCR charge that resulted in a settlement. (*See, e.g.*, Doc. No. 1 ¶¶ 11–13.) While it is not entirely clear from the pleading, the Court does not believe that Robertson is relying on these allegations to support the civil rights violations alleged in Count 1. Beyond grouped and conclusory allegations of an unlawful policy or custom or a conspiracy, the only other factual allegation against Dean Oldfield is that he warned Robertson that he "was going to fuck his crazy ass." (*See id.* ¶ 16.) Isolated remarks involving verbal harassment or rude behavior do not establish a constitutional violation. *Logue v. United States Marshals*, No. 1:13-cv-348, 2013 WL 3983215, at *4 (S.D. Ohio Aug. 1, 2013) (collecting cases).

[6] Robertson does assert that, on the way to Summa's emergency room, defendant Wayner left Robertson in his hot squad car for one half hour and Robertson suffered dehydration as a result. (*Id.* ¶ 23.) Robertson does not allege that this act violated his constitutional rights, and it is not otherwise sufficient to state a claim under § 1983.

support the conclusions. (*See, e.g.*, Doc. No. 1 ¶¶ 4–7.) Of course, allegations of a single incident of alleged unconstitutional activity are insufficient to set forth a policy or custom. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct, 2427, 85 L. Ed. 2d 791 (1985); *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005).

Robertson suggests, however, that "with his factually specific [twenty] page Complaint, [he] has sufficiently placed [d]efendants on notice of the grounds of civil conspiracy, invasion of privacy, and violations of the involuntary commitment state claims." (Doc. No. 20 at 2.) But the complaint, as a whole, is predominately cobbled together with a string of conclusory/and or vague allegations and legal conclusions. Indeed, the first two pages is composed primarily of the caption, and almost half of the twenty-page complaint is devoted to a nearly bare recitation of the elements of the eleven claims brought against defendants. (*See* Doc. No. 1 at 12–20.)

Nevertheless, Robertson posits that, with respect to Count I, he is "entitled to discovery on the facts surrounding the involuntary commitment of other students as well." (Doc. No. 14 at 6.) He notes that, "[i]f discovery finds that there are no other students whose constitutional rights have been violated, then [Robertson] will dismiss this claim." (*Id.*) In fact, discovery appears to be Robertson's solution to many of his pleading's deficiencies. *See, e.g. id.* at 5 ["During discovery, [p]laintiff will uncover evidence that this is [indeed] the case [referring to the complaint allegation that defendants have a policy of not complying with due process during student disciplinary hearings]"; *id.* at 4 ["Discovery will narrow or support the specific involvement of [any particular d]efendant."].) Robertson has described the essence of a "fishing expedition." Post-*Iqbal* and *Twombly*, a party may not allege a fact, such as the existence of a policy, and hope that discovery will reveal facts to support the claim. *See Holliday v. Wells*

13

*Fargo Bank, NA,* 569, F. App'x 366, 372 (6th Cir. 2014); *Curney v. City of Highland Park*, No. 11-12083, 2012 WL 1079473, at *5 (E.D. Mich. Mar. 30, 2012). As will be seen from a review of the remaining claims in the complaint, the complete absence of factual allegations from which the Court may plausibly infer a right to relief requires dismissal for failing to meet the pleading standard set forth by the Supreme Court in *Iqbal* and *Twombly*.

Additionally, Robertson's passing mention in his opposition briefs of a desire to amend the complaint should any portion of the motions to dismiss be granted (*see, e.g.,* Doc. No. 14 at 9; Doc. No. 20 at 11) does not permit the Court to discern, under Fed. R. Civ. P. 15(a)(2), whether justice would require permitting an amendment. *See Youngblood v. Bd. of Comm'rs of Mahoning Cty., OH*, No. 19-3877, 2021 WL 614781, at *3 (6th Cir. Feb. 17, 2021) (indicating that the Sixth Circuit "disfavor[s] . . . a bare request [to amend a complaint] in lieu of a properly filed motion.") (quotation marks and citation omitted) (alteration in original).

Furthermore, Robertson failed to follow the well-accepted standard practice of presenting a copy of a proposed amended complaint, making it impossible for the Court to consider his undeveloped request. *See, e.g.*, *Miller v. Springfield Police Div.*, No. 3:19-cv-145, 2021 WL 2688555, at *3 (S.D. Ohio June 30, 2021) ("in order to comply with Fed. R. Civ. P. 7(b)'s 'particularity' requirement, a complete copy of the proposed amended complaint must accompany the motion [for leave to amend] so that both the Court and opposing parties can understand the exact changes sought[]") (quotation marks and citations omitted; alteration in original); *Smith v. Nationstar Mortg., LLC*, 756 F. App'x 532, 536–37 (6th Cir. 2018) (absent a copy of the proposed amended complaint, a court would not have "enough information to consider the factors relevant to [a] request [for leave to amend]").

14

### 2. *Count II—Failure to Intervene*

In Count II, Robertson alleges that "[d]uring and after the arrest of Plaintiff Robertson, Defendant individuals and police officers were aware or should have been aware that they violated Plaintiff's constitutional rights." (Doc. No. 1 ¶ 38.) He further alleges that "Defendants failed to protect and intervene to prevent the other Defendants from violating Plaintiff's federally protected rights." (*Id.* ¶ 39.) UA Individuals argue that, even with the factually specific allegations contained elsewhere in the complaint, this claim also suffers from insufficient group pleading.

To state a § 1983 claim on the basis of a failure-to-intervene, the plaintiff must allege that each individual defendant "(1) 'observed or had reason to know that [constitutional harm] would be or was [taking place], and (2) . . . had both the opportunity and the means to prevent the harm from occurring.'" *Sheffey v. City of Covington*, 564 F. App'x 783, 793 (6th Cir. 2014) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). A defendant cannot be held liable, however, unless there was "a realistic opportunity to intervene and prevent harm." *Wells v. City of Dearborn Heights*, 538 F. App'x 631, 640 (6th Cir. 2013) (quotation marks and citation omitted).

The Court agrees that Robertson's grouped and conclusory allegations involving the failure of "Defendants" to intervene are insufficient to meet the *Iqbal/Twombly* pleading standard. Indeed, it appears evident from the remaining allegations that not all of the AU Individuals were even present when Robertson was initially "pink-slipped" and, with respect to those who were present, it is entirely unclear which defendants caused the commitment to take place and which defendants failed to intervene when presented with a realistic opportunity to do

15

so. Under these circumstances, the Court finds that Robertson has failed to state a claim for failure to intervene under 42 U.S.C. § 1983. *See, e.g., Daugherty v. Louisville-Jefferson Cty. Metro. Gov't*, 495 F. Supp. 3d 513, 525–26 (W.D. Ky. 2020) (finding that group pleading of defendants and conclusory allegations failed to state a claim for failure to intervene).

Moreover, the Court questions the viability of such a claim, even with particularized and non-conclusory pleading. In *Bunkley v. City of Detroit, Mich.*, 902 F.3d 552, 565 (6th Cir. 2018), the Sixth Circuit held that liability premised on a failure to intervene extends beyond claims of excessive force. In so ruling, the court found that there was clear precedent for finding that officers have a duty "to intervene to prevent an arrest not supported by probable cause." *Id*. at 566 (citing *Dist. of Columbia v. Wesby*, --U.S.--, 138 S. Ct. 577, 590, 199 L. Ed. 2d 453 (2018)). Similarly, in *Smith v. Ross*, 482 F.2d 33, 36 (6th Cir. 1973), the Court held that a police officer "can be liable under § 1983 when by his inaction he fails to perform a statutorily imposed duty to enforce the laws equally and fairly and thereby denies equal protection to persons legitimately exercising rights guaranteed them under federal or state law." But the rulings in *Bunkley* and *Ross* cannot reasonably be extended to create a general duty of officers to intervene whenever they may witness violations of an individual's constitutional rights. *See Glover v. Rivas*, No. 2:19-cv-13406, 2021 WL 963936, at *6 (E.D. Mich. Mar. 15, 2021). The Court's research has failed to uncover support for the proposition that an officer can be held liable under § 1983 for failing to prevent a civil commitment. For this additional reason, the claim is dismissed.

### 3.    *Count III—Federal Conspiracy*

In Count III, Robertson alleged that "Defendants conspired to deprive Plaintiff Robertson of his federally protected rights[]" in violation of 42 U.S.C. § 1985. (Doc. No. 1 ¶ 42.) To plead a

violation of § 1985, a plaintiff must allege that the defendants conspired together for the purpose of depriving him of the equal protection of the laws and committed an act in furtherance of the conspiracy which was motivated by racial or other qualifying class-based discriminatory animosity. *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Farmer v. Reece*, No. 3:19-cv-1189, 2020 WL 32512, at *2 (N.D. Ohio Jan. 2, 2020) (citations omitted).

UA Individuals argue that Robertson has "failed to set forth any specific operative facts in support of the most basic elements of these claims[:] the existence of a conspiracy, acts in furtherance of the conspiracy and class-based animus." (Doc. No. 17 at 6.) Beginning with the class-based animus, UA Individuals are correct that Robertson has failed to allege that there was a conspiracy motivated by Robertson's membership in any protected class.[7] For this reason alone, the federal conspiracy claim is subject to dismissal.

Indeed, the only factual allegations that suggest a class-based animus reference disability and age discrimination. Robertson asserts that he was harassed and ridiculed by "Defendant Deans, as well as other employees and students," "based on his age and mental health disability of anxiety." (Doc. No. 1 ¶ 10.) Further, in one of the only somewhat specific factual allegations addressing his conspiracy claims, Robertson alleges that Dr. Gspandl "wrongfully communicated with" Dean Oldfield and that the two "unlawfully conspired to keep [Robertson] locked up in a psychiatric hospital indefinitely." (*Id.* ¶ 27.) Assuming the truth of these arguably conclusory

---

[7] Robertson argues that "'class based[] animus' means only that two or more parties acted together in unlawful conduct." (Doc. No. 14 at 6.). This is an incomplete definition, at best. Rather, class-based animus necessary to support a federal conspiracy claim requires discriminatory animus motivated by membership in a recognized and protected class. *See Bass*, 167 F.3d at 1050.

allegations, and further assuming that it can be inferred from these allegations that Robertson is asserting a conspiracy based on disability animus, the federal claim still fails as a matter of law because § 1985 does not cover claims based on disability-based discrimination.[8] *See Bartell v. Lohiser*, 215 F.3d 550, 559 (6th Cir. 2000) (noting that § 1985(3) "does not cover claims based on disability-based discrimination or animus").[9] This claim is also dismissed.

### 4. *Count VI—Rehabilitation Act of 1973*

At the outset, UA Individuals correctly observe that the Rehabilitation Act does not impose liability on individuals. *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("neither the ADA nor the [Rehabilitation Act] impose liability upon individuals") (citing, among authority, 29 U.S.C. § 794(b)). Accordingly, Robertson's Rehabilitation Act claim against UA Individuals is dismissed.

In his complaint, Robertson asserts that his Rehabilitation Act claim against UA "involves the same law and facts" as set forth in his now voluntarily dismissed claim under the ADA. (Doc. No. 1 ¶ 63.) He further alleges that UA and others "knowingly and deliberately violated the Rehabilitation Act of 1973 by failing to accommodate [his] disabilities under 29 U.S.C. § 504 et seq." (*Id.*)

---

[8] Robertson insists that he has not raised an age discrimination claim, and a fair reading of the complaint suggests that many of the references to age animus relate to allegations surrounding the previously dismissed OCR charge and actions that precipitated the phone call to Baker and the resulting civil commitment. Nevertheless, if Robertson were attempting to rest his § 1985 claim on age discrimination, it would fail as a matter of law. *See Anderson v. Ky. One Health, Inc.*, No. 3:17-cv-359, 2017 WL 4682431, at *5 (W.D. Ky. Oct. 17, 2017) (collecting cases finding that age is not a class recognized and protected by § 1985).

[9] The remaining conspiracy-based allegations are either conclusory or rely on group pleading. (*See* Doc. No. 1 ¶¶ 42–46.) Robertson argues that "[c]learly, when one looks at the group pled allegations, [he] is averring that [they] were acting together to deprive [Robertson] of his constitutional rights." (Doc. No. 14 at 6.) As previously noted, group pleading does not meet the *Iqbal/Twombly* pleading standard for individual liability for civil rights violations, nor does it satisfy the degree of specificity required for pleading a federal conspiracy. *See Bass*, 167 F.3d at 1050.

Initially, UA argues that Robertson cannot maintain his Rehabilitation Act claim because he fails to allege facts to support a finding that he requested and was denied a reasonable accommodation. (Doc. 11 at 21, citing *Shaikh v. Lincoln Mem'l Univ.*, 608 F. App'x 349, 363 (6th Cir. 2015) ("A publicly funded university is not required to provide accommodation to a student under the ADA or the Rehabilitation Act until the student provides a proper diagnosis of his claimed disability and specifically requests an accommodation.") (quotation marks and citation omitted)). Robertson counters by explaining that the "accommodation" he mentions in his complaint refers to the right to have the university "at least consider [Robertson's] disability before it takes wrongful action against him." (Doc. No. 14 at 9.) This appears to be just another way of saying that Robertson was discriminated against on the basis of his disability. As such, the Court finds it appropriate to treat Count VI as purporting to raise a disability discrimination claim under the Rehabilitation Act.

"Section 504 of the Rehabilitation Act provides that a qualified individual with a disability shall not, 'solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'" *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 681 (6th Cir. 2016) (quoting 29 U.S.C § 794(a)). While both the Americans with Disabilities Act and the Rehabilitation Act "require the challenged discrimination to occur because of disability," . . . [t]he Rehabilitation Act sets the higher bar, requiring plaintiffs to show that the defendant's acts were done 'solely by reason of' the disability." *Harrison v. City of Cleveland*, No. 1:19-cv-2328, 2020 WL 6913489, at *3 (N.D. Ohio Nov. 23, 2020) (quotation marks and citation omitted).

UAL argues that Robertson's complaint fails to successfully plead a claim under the Rehabilitation Act because he does not allege that he was discriminated against solely because of his disability. (Doc. No. 11 at 22.) Citing paragraph 17 of the complaint, UAL argues that Robertson "alleges the UA law school 'are discriminating [because of] my age.'" (*Id.*, citing Doc. No. 1 ¶ 17.) Robertson maintains that he has not raised an age claim in this lawsuit and that the alleged disability discrimination at issue here—the civil commitment and the forcible administration of anti-psychotic medication—is the basis for the present litigation. (*Id.* at 8, 9.) Further, Robertson argues that many of the paragraphs in the complaint referencing age relate to his previously dismissed OCR charge of age and disability discrimination. (Doc. No. 14 at 8.) Robertson is correct that he has not raised a claim of age discrimination, and many of his age-related allegations appear to reference past alleged age discrimination.

Robertson further posits that he was not required to use the word "solely" when pleading a claim under the Rehabilitation Act. (Doc. No. 14 at 8.) This may be true, but claims are set forth through the pleading of factual allegations. *Iqbal*, 556 U.S. at 678 (The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must allege "sufficient factual matter" to render the legal claims plausible). Here, the only factual allegations in the complaint support a finding, if believed, that UAL discriminated against Robertson on the basis of his disability *and his age*. (*See, e.g.,* Doc. No. 1 ¶¶ 10, 17, 19.). This is fatal to his Rehabilitation Act claim against UAL and it is, therefore, dismissed.

20

## V.  Summa Defendants' Motion for Judgment on the Pleadings

### A.    Count III—Federal Conspiracy

Summa Defendants also seek Rule 12(c) dismissal of all claims asserted against them. Following Robertson's voluntary dismissal of certain claims, the only remaining federal claim against Summa Defendants is his federal conspiracy claim.[10] This claim, as it relates to Summa Defendants, must be dismissed for the same reasons it cannot survive as to the UA Individuals: Robertson has not alleged (and cannot allege) that the conspiracy was motivated by his membership in a recognized and protected class. *See Bass*, 167 F.3d at 1050.

### B.    Count VII—Invasion of Privacy

In their opening brief, Summa Defendants argue that Robertson's invasion of privacy claim is time-barred because "[l]ibel and false light invasion of privacy claims based on defamation are subject to a one-year statute of limitations period, that begins to accrue on the first day of publication." (Doc. No. 16 at 112, quotation marks and citations omitted). Robertson insists, however, that a four-year statute of limitations applies because he has only alleged a wrongful intrusion into one's private affairs. (Doc. No. 20 at 5, citing *Hidey v. Ohio State Highway Patrol*, 689 N.E.2d 89, 92 (Ohio Ct. App. 1996).)

---

[10] In his opposition brief, Robertson clarifies that he has not brought a claim against Summa Defendants under the Rehabilitation Act. (Doc. No. 20 at 4.)

But the allegations contained in Count VII do not support the conclusion that Robertson has limited his pleading to a wrongful intrusion privacy claim. The entire substance of Count VII is contained paragraphs 66–68 of the complaint, which provide in toto:

> Defendants wrongfully intruded upon [Robertson's] solitude and private affairs. *Defendants unlawfully made public disclosure of private facts.*

> The intrusion *and public disclosure of private facts* would be highly offensive to a reasonable man.

> [Robertson] suffered damages because of the invasion of privacy.

(Doc. No. 1 ¶¶ 66–68, emphases added.) Because Robertson has clearly attempted to plead both a wrongful intrusion and a false light claim, the shorter one-year statute of limitations applies and the claim, as currently pled, is time-barred.[11] *See Murray v. Moyers*, No. 2:14-cv-2334, 2015 WL 5626509, at *4 (S.D. Ohio Sept. 24, 2015). This claim is dismissed as time-barred.

### C.     Count X—Involuntary Commitment

In Count X, Robertson alleges that Summa Defendants violated Ohio Rev. Code Chapter 5122 "by failing to comply with . . . the prerequisites to initiate an emergency commitment and procedure during the commitment." (Doc. No. 1 ¶¶ 76–78.) Specifically, Robertson claims that Summa Defendants failed to discharge him within 72 hours of commitment, "failed to provide him an evidentiary hearing, denied him counsel, denied him an independent psychiatric examination, forced him to take antipsychotic medicine without a court order . . . and failed to dismiss him after he requested to leave." (*Id*. ¶ 78.)

---

[11] Summa Defendants also argue that Robertson has failed to set forth sufficient factual allegations to support a claim for an invasion of privacy claim based on a wrongful intrusion. (Doc. No. 23 at 5–6.) The Court need not reach this argument, raised for the first time in a reply brief.

This claim fails, as a matter of law, because "the provisions of Ohio Rev. Code Chapter 5122 provide no private right of action." *Simpkins v. Grandview Hosp.*, No. 3:18-cv-309, 2019 WL 3083349, at *7 (S.D. Ohio May 17, 2019) (citing *Russell v. Witham*, No. 1:07-cv-2890, 2007 WL 4561609, at *3 (N.D. Ohio Dec. 21, 2007)), *report and recommendation adopted in part, rejected in part on other grounds*, 2019 WL 3369440 (S.D. Ohio July 26, 2019). Instead, the statute provides that the Ohio Department of Mental Health ("DMH") may "adopt such rules as are reasonably necessary to effectuate the provisions of this chapter." Ohio Rev. Code § 5122.33. Consistent with the statute, DMH has adopted a grievance mechanism whereby a patient may challenge any statutory violations of the involuntary commitment process. *See* DMH Rule 5122-14-11(D).[12] "Accordingly, the appropriate course of action for [Robertson] to obtain redress is through the grievance procedure."[13] *Russell*, 2007 WL 4561609, at *4. Robertson's statutory involuntary commitment claim is dismissed with prejudice.

D.    **Count XI—State Conspiracy**

In Count XI, Robertson alleges that "Dean Oldfield, University of Akron Law School and Dr. Gspandl, among others, combined maliciously to unlawfully injure [Robertson] by denying him release from the psychiatric hospital and forcing him to take psychiatric medicines." (Doc.

---

[12] DMH Rule 5122-14-11(D) provides:

> Each inpatient psychiatric service provider shall have written policies and procedures for patient rights to include a grievance procedure, which shall provide for and maintain the basic human rights of all patients in accordance with Chapter 5122 of the Revised Code, including but not limited to sections 5122.27 to 5122.31 of the Revised Code, and in accordance with this rule.

[13] Robertson's reference to Ohio public policy law and citation to *Greenley v. Miami Valley Main. Contrs., Inc.*, 551 N.E.2d 981 (Ohio 1990), do not change this conclusion. In *Greenley*, the court recognized a limited exception to the common law at-will employment doctrine in Ohio for employees terminated for reasons prohibited by public policy. *Id.* at 986. There is nothing in that employment law case that gives this Court the authority to re-write an Ohio statute to provide for a remedy that was not contemplated or provided for by the State legislature.

No. 1 ¶ 81.) The Court has permitted Robertson to voluntarily dismiss this claim as against UAL and Dean Oldfield. (*See* Doc. No. 21 at 2.) Because Dr. Gspandl is the only defendant remaining in this count, it cannot be sustained for this reason alone. *See, e.g., Caiazza v. Mercy Med. Ctr.*, No. 2003CA181, 2014 WL 2466313, at *13 (Ohio Ct. App. May 27, 2014) (dismissing state law conspiracy claim where only remaining party was dismissed and holding that "[a] claim for civil conspiracy requires proof of a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages") (quotation marks and citation omitted).

Dr. Gspandl also argues that this claim must be dismissed as time-barred. Because the conspiracy claim is premised upon allegations of false imprisonment and/or medical negligence, Dr. Gspandl suggests that the applicable statute of limitation for the claim is one year and Robertson did not file his claim within one year of his civil commitment. (Doc. No. 16 at 15.) Robertson disagrees and argues that a four-year statute of limitations applies because his state civil conspiracy claim is tied to his invasion of privacy claim. (Doc. No. 20 at 11.)

"Pursuant to Ohio law, a civil conspiracy claim standing alone cannot be the subject of a civil action." *Torrance v. Rom*, 157 N.E.3d 172, 192 (Ohio Ct. App. 2020) (citations omitted.) "'The general rule is that a conspiracy cannot be made the subject of a civil action unless something is done which, without the conspiracy, would give a right of action." *Id*. (quoting *Minarik v. Nagy*, 193 N.E.2d 280 (Ohio Ct. App. 1963)). Here, Robertson has voluntarily dismissed his false imprisonment claim, and the Court has determined that his invasion of privacy claim, as pled, is time-barred. Additionally, Robertson has acknowledged that he is not raising a medical malpractice claim. (Doc. No. 20 at 2–3.) Because civil conspiracy cannot

survive as a stand-alone claim, and there is no underlying claim to support it, it must be dismissed for this additional reason.[14]

## VI. CONCLUSION

For the foregoing reasons, Robertson's motion to voluntarily dismiss (Doc. No. 21) is GRANTED. The motions for judgment on the pleadings (Doc. Nos. 11, 16) are also GRANTED IN PART. Because all claims are either voluntarily dismissed or dismissed with prejudice as set forth herein, this case is closed.

**IT IS SO ORDERED**.

Dated: August 20, 2021

_____

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[14] Moreover, the allegations in the complaint fail to state a conspiracy claim. Like its federal counterpart, a civil conspiracy under Ohio law "must be pled with some degree of specificity, and vague and conclusory allegations that are unsupported by material facts will not be sufficient to state a claim." *Avery v. Rossford, Ohio Transp. Improvement Dist.*, 762 N.E.2d 388, 395 (Ohio Ct. App. 2001). Robertson argues that he has sufficiently pled a conspiracy under Ohio law because he has alleged that Dr. Gspandl "wrongfully communicated" with UAL and Dean Oldfield and that, as a result, they must have conspired together. (Doc. No. 20 at 10–11, citing Doc. No. 1 ¶¶ 27, 80.) But the fact that the two men communicated, standing alone, does not "nudge[]" his state law conspiracy claim "across the line from conceivable to plausible[.]" *See Twombly*, 550 U.S. at 570.